The first case this afternoon is case number 4-14-0311, Enray, the Marriage of Keller. Appearing for the appellant is Attorney Thomas Drysdale and for the appellee, Attorney Mark Karpus. Good afternoon. Mr. Drysdale, are you ready to proceed? Yes, sir. You may. You may please record, Mr. Karpus. My name is Tom Drysdale and I am here today on behalf of the appellant, Mary Keller. In my time before the court today, I will establish that the decision of the trial judge regarding the division of property in this case was against the manifest weight of the evidence for several reasons. But today I'd really like to focus on the inheritance issue that we raised in our brief because it affects the entire distribution of property in this case. As we laid out in our brief, the trial judge failed to take into account an inheritance of over a million dollars that the petitioner would receive when dividing the marital property. And he did so because the petitioner willingly failed to disclose this inheritance prior to the initial hearing and failed to disclose the inheritance during the motion to reconsider as well. And this failure to disclose is evidence in the record in two ways. First, the record shows that the petitioner knew this inheritance was going to be presented to him and he willingly went out of his way to avoid disclosing it. And you can see that from the questioning that happened at the initial hearing. It goes as follows and it says, question, since the time of this proceeding your mom has passed? Answer, that's correct. Question, did she have a will? Answer, I suppose. Question, well you know if she has a will, don't you? Answer, I don't know. Question, the will hasn't been filed for probate? Answer, my olders and brothers and sisters are the executors, that's all I know. And I'd like to stop right there. In one breath the petitioner tries to claim that he doesn't know if there's a will. He knows his mother's passed but doesn't know there's a will. In the very next breath he says, my brothers and sisters are the executor of the will. And then he tries to say, that's all I know. So there's problem number one. He makes a statement that he doesn't know there's a will and then goes on to tell us, well I know who the executors of the will are. That's the first showing in the record right there that he knew that this will was in place, that the probate proceedings had started because he knew who the executors were. But then the record goes on to show that he knows even more once it has to be dragged out of him. And it says, question, who are they using as an attorney to handle the will? Answer, I think it's none of your business. The court, answer the question, Mr. Keller. Answer, David Eberspacher. So he starts off by saying, well I don't know if there's a will. Then he says, well I know who the executors are. Then he says, well I know who's handling the probate proceedings. More and more as it gets drug out of him, the testimony showing that he did know that these probate proceedings were going on. And he did know that they were going on at the time of the initial hearing on this dissolution. And he should have disposed that information. And once these two pieces of information are drug out of the petitioner, he completely shuts down on any questioning regarding this topic. Question, has an inventory been filed? I don't know. You stand to inherit roughly one-third of that estate. Isn't that true? No. It's not true? That's not true. How much do you stand to inherit? I don't know. You do expect an inheritance, don't you? I don't know. And so the petitioner expects the court to believe that he can tell you who the will executors are, and that he knows who's handling the will, but he claims to know nothing about whether he's receiving an inheritance at all. And that claim just simply isn't supported by the record. Because the record indicates, developed at the trial, that in 2011 his mom gave him $13,000 alone. And then he avoided questions about how much she had given him in subsequent years by stating, oh, I don't know, and oh, I don't recall. So he clearly is going through great lengths to avoid any questions about money that his mother had given him or what he would receive by way of inheritance. And most importantly, as pointed out in the motion to reconsider, the records of the Circuit Court of Coles County indicated that the notices for these probate proceedings had been filed six weeks prior to the time of the hearing. And the court records show that the petitioner received notices of all of the probate filings. So the petitioner was put on notice prior to this hearing. He's put on notice that he is going to be named as an heir. He's put on notice that a petition for entry of probate of this will is being filed. He's on notice of all this, but yet he sits up during the hearing and he says, I don't know if there's a will. Well, I do know who the executors are, and I do know who's handling the will. I don't know if I'm getting any inheritance, despite the fact that this case has already been put into probate at the time of the hearing. These are clearly misstatements, willing misstatements by the petitioner based on the Coles County records. And these pleadings also on file in the probate case show that the petitioner received notice of the fact that the will was on file and the estate had some $5.2 million of real estate involved in those probate proceedings that the petitioner knew he was going to be involved in because the notices were coming to him. Mr. Grisdale, is there anything in this record that tells us anything about the probate filings? Your Honor, we raised some of the things at the motion to reconsider. At the time of the motion to reconsider, at the time that it was presented to the trial judge, we had gathered at that point, based on the testimony provided by the petitioner during the dissolution hearing, we gathered the probate proceedings and we had presented them to the trial judge at that point. Are they in the record? I don't believe they are in the record, Your Honor, but I know that during the motion to reconsider, the case number was presented, the docket entry was presented to the trial judge, and in fact, at the time of the motion to reconsider, the probate estate had already been settled. Was this in Coles County? Yes, Your Honor, it was. Why wasn't it presented at the time of the hearing? Your Honor, are you talking about at the time of the dissolution hearing, Your Honor? Yes, where you asked these questions of Mr. Keller and you claimed at that time you gave incorrect responses. I don't understand. Coles County isn't that big. You apparently had an inclination as to what was going on with this estate. If it was pertinent, why wasn't it available and why did you confront him with it at that time? Well, Your Honor, at the time of the dissolution hearing, we were aware vaguely that the petitioner's mother had passed away and that he may be an heir based on what was presented to us by our client. We attempted to elicit the testimony from the petitioner as to what his involvement was in the probate estate and what he knew. What was his mother's name? Your Honor, I'm sorry, I don't know the answer. Smart Money would be her last name was Keller. Yes, Judge. And how extensive a search of the Coles County files would have taken, probate files, to find out if there's been any probated will in the name of his mother? Well, Judge, while that maybe could have been done before the hearing, it certainly was done prior to our filing the motion to reconsider. This Court has written repeatedly that motions to reconsider aren't timed to present the Court with new evidence, especially that which could have been obtained prior to the hearing. Well, Judge, it's certainly our position that if this information is being mailed to the petitioner, sent to the petitioner, and there's a discovery request that covers this information specifically, that it's the petitioner's duty to disclose this information. They have an ongoing duty to supplement their discovery. And while we may have been able to do that search, that doesn't excuse their discovery violation. What was the discovery request that you say required that they disclose this probate information? Your Honor, when we propounded our request for production of documents, our number 13 on our request for production of documents specifically asks about all filings or all pleadings regarding any inheritances that the petitioner would have interest in. And so those ongoing duties to supplement, while when we propounded those requests, I'm sure that there was, you know, these proceedings weren't going on yet. But duty to supplement says that once I start getting notice of substantial non-marital assets that are coming in that need to be taken into account to determine the party's overall economic circumstances, those have to be disclosed to us. Was there a discovery motion filed in the circuit court relative to what you're suggesting was a lack of discovery compliance? There was not, Your Honor. But it is our position that the ongoing duty to disclose certainly covered these documents that were requested in the initial discovery disclosure. And then... But counsel, and you can get to your next argument here, but I do want to know this. How can we consider something that's not in the record? In the brief, there is mention made as to the dollar value of the estate and also that there was an approval of the probate and that Mr. Keller was going to receive a certain percentage of that estate. How does any of that information get before us? Well, Your Honor, there was the allegations in the motion to reconsider. And again, the trial judge was presented with the case number in Coles County. He was presented with the fact that Mr. Keller had signed papers prior to. He was presented with all this information. And in his ruling on the motion to reconsider, the trial judge really didn't consider any of this. He just simply addressed the issue of whether or not judicial notice can be taken and then moved on to address the other issues. So the trial judge failed to even take into account the arguments that were being made here regarding the fact that there is a substantial non-marital asset here that's not being disclosed that they knew of, that they willingly failed to disclose this information when they had it the entire time. Why do you call that a marital asset? I'm sorry, Your Honor, it was a misstatement, a non-marital asset. And it's a non-marital asset that should have been considered by the trial judge when looking at marital and non-marital property and determining the overall economic circumstances of the parties when he's dividing property and determining whether or not the respondent in this case is entitled to maintenance. Put aside for the moment whatever the inheritance was and assume that the husband's mother was still alive. How is the estate, the marital estate divided? I'm sorry, Your Honor. Well, was it cut in half, 50-50? When we're looking at the overall marital estate, there was the respondent kept, or the petitioner, I'm sorry, Mr. Keller, kept the marital home. He kept all of the farm ground that the marital home was associated with. He kept a portion of his retirement accounts. And very importantly, Your Honor, he was paying temporary maintenance and there was no maintenance order at that point. There was no permanent maintenance order based on the division of the property that the trial judge made. And according to the maintenance statute, the trial judge looked at the economic circumstances of the party and determined that, well, I'm okay with the property division that's been done here and therefore we don't need to order maintenance. But had the trial court considered that significant non-marital asset that should have been presented to him, the trial judge very well may have said, well, now when I look at the economic circumstances of the parties, maybe maintenance is appropriate here. And so it goes back to my original statement that the failure to disclose and consider this very, very significant non-marital asset really affects the entire judgment of dissolution here because it affects the maintenance and it affects the property issues at stake here. And we cite to the Smith case in our brief, and I think the Smith case speaks to exactly what we're presenting to this court. And as the Smith court noted, the court considers the relevant economic circumstances of the parties when disposing of the property. And the Smith court went on to specifically state that the act requires the court to consider non-marital property even where the non-marital property to be received is in the future. And that case specifically dealt with a wife trying to argue to the court that you can't consider my non-marital asset of the inheritance that I'm going to receive from my mother because that inheritance is currently tied up in probate proceedings and we don't know what's going to happen to that inheritance. And the trial court refused to accept that argument. And now the petitioner tries to distinguish that case and say, well, it's different because they stipulate it to the value. But that's not what the Smith case is arguing. The Smith case is arguing that if you know of a non-marital asset that you are going to be getting in the future, if you know that that non-marital asset is coming, it needs to be disclosed and the trial court needs to consider it when considering the relevant economic circumstances of the parties. Certainly the trial court does not have a full snapshot, a full picture of the relevant economic circumstances when one party fails to say, hey, there's a probate proceeding open and I'm going to be getting substantial sum of money in that probate proceeding or a substantial amount of land or whatever it may be. That doesn't give the trial court a full picture of the relevant economic circumstances of the parties. And so the trial court's judgment then becomes against the manifest way to the evidence because the petitioner hasn't provided the trial court with all the evidence. And they try to shift that duty over to us and say, well, you should have did it. But that's not our job. It's not our responsibility to produce evidence that is in their possession and control. It's being mailed to him. He's signing off on it. And it's, you know, to argue that it's our responsibility to produce this when, as we pointed out in our brief, come time for the motion to reconsider, the estate actually at that time had been resolved. He had the money. He had the property. It had been given to him. It's been filed and approved. And as, you know, presented at the... What happened other than you lost to make the probate file more accessible? Your Honor, we knew at that time, we got the information to lead to our line of questioning at the hearing. Nothing made the probate file more accessible to us. However, nothing also made the probate file less accessible to them. They have the duty to disclose those kinds of pieces of information to us. It's not our duty to drag discovery out of the other side. You know, looking at a panel of former trial judges here, and it occurs to me that it would have been a very significant moment in this proceeding had you claimed you didn't receive material that you should have received, and the best evidence of how you should have received it is, here's the probate file and look at this, Judge, and present it to the court after Mr. Keller claims he's ignorant of all of this. Well, Your Honor, at the time of the original proceeding, we were unaware that the probate proceeding had gone forward. So that's just because you didn't look. You knew there was a probate proceeding, and going in and checking in the circuit clerk's office and saying, show me the probate proceeding with regard to this lady named Keller, would have revealed where it was, wouldn't it? Well, Your Honor... Which is what you did for purposes of the hearing on the petition to reconsider. Your Honor, we simply knew that the petitioner's mother had passed away. We gathered information by asking him, is the proceeding in probate, is there a will, to which he skirted the answers, he avoided giving disclosure on that, and so we took what we learned at that hearing, and we said, okay, you know, your mother has passed away, and then he said, well, my brothers and sisters are the executors, and David Ebersbacher is handling the estate. At this point, then, we know there's an estate. All we knew prior was that the petitioner's mother had passed away. What was the discovery, the nature of the discovery request you made upon the defendant, excuse me, petitioner prior to the hearing, regarding the estate and any inheritance? It was a general discovery request for any documents and any pleadings that the respondent had received regarding any inheritance, and so at the time he had not received an inheritance, but the probate proceedings here that we found out later had been signed off and initiated by the petitioner prior to the original dissolution hearing. He had all this information prior to the original dissolution hearing, and it was covered by that request to produce, and at that point they had a duty to supplement and give us that information. I presume the will was filed with the circuit clerk? Yes, Your Honor. And was that available to you? Presumably, yes, Your Honor, it was. So all she had to do was go to the clerk's office and say, let me pull this probate file and see what's in it. Again, Your Honor, respectfully, we didn't know that there was a probate file. We simply knew that she passed away, and that's why we started asking questions at the hearing, was there a will to which he denied, and then he came back and started telling us not only is there a will, but there's probate proceeding going on. We learned that information from Mr. Keller at the hearing, which is why we presented the new information we gathered to the trial judge at the motion to reconsider. And so at the very least, the trial judge could have or should have found one of two things at the motion to reconsider. One, this is new evidence that warranted the granting of the motion to reconsider, or two, the petitioner willingly failed to disclose all of this information, which also should warrant the granting of the motion to reconsider. And as I stated before, there are several other issues raised in the brief, but I see my time is up, if I can briefly finish. Briefly. This one really is the crux of the whole argument here and drives the whole property distribution, and therefore we would ask this court to reverse the trial court's findings. Thank you. Thank you, Mr. Griswold. Mr. Karpus? Thank you. May it please the court and counsel, in listening to respondents' counsel's argument, that seems to be the problem with every issue that's raised in their brief, is that there wasn't enough of this prepared or there wasn't enough of this done, there wasn't the adequate documentation, whether it be the property down by the river or disability or otherwise, there's not enough information that's presented, or any at all, to support any of the findings that they are asking this court to reverse of the trial court. The inheritance situation is interesting because after, actually there was a deposition that was scheduled of the parties around the time that Mr. Keller's mother passed. That deposition was canceled by agreement and then reset. After her death, the deposition is taken, and there is not one question raised by counsel for respondent in the deposition of Mr. Keller that had anything to do with inheritance at all. Well, prior to that, had there been any disclosure made or pleading that contained information relative to a potential bequest and a potential inheritance by your client? There had not been. I believe the estate was opened on October 1. The deposition of the parties taken in Mattoon was done on October 3. But just playing the devil's advocate here, thinking about what the question would be that your opponent would raise, how would she be on notice to ask such a question in that deposition? Well, from what we've heard from counsel today, apparently they received information from their client that led them to be able to ask those questions at the time of trial. But you said at the time of deposition, and that's what I'd like you to focus on. At the time of the deposition, you said no question was asked about the probate. True. How were they on notice of the probate at that time? I don't know how they would have been on notice of the probate. I did not know that the probate matter had been filed on October 1 until I started to go back and look in the same fashion that your honors have asked them to go back and look. Okay. Go ahead. How long after the deposition and the death of his mother did the hearing occur? The trial? Yes. She passed away, I believe it was on September 10 of 2014. Our trial was, and I don't know the date, but it was the Monday of Thanksgiving week, 2014. So within... Two months? Within two months, a little after two months. As you heard, Mr. Drysdale argued that they requested a discovery response with regard to any probate or inheritance or the like at the time of the hearing and before the hearing. Weren't you on notice about all of this? To be candid with your honor, I don't recall that specific request being made, and it's not part of the record. If such a request was made, then that would have us on notice, but let's take a look at what in the grand scheme of things is going on. Pausing right there. It's your representation, you don't recall there being a request for information about any inheritance? Inheritance, I don't recall specifically. Okay. I'm not saying it's not there, I just don't recall it. Okay. Go ahead. But it goes back to the grand argument being made that whatever the issue is, that the trial court did not take into account this, this, or this, when they have the ability to corral that information, whether it be with regard to the respondent's disability, with regard to the respondent's capabilities as far as work goes for the determination of maintenance or the evaluation of maintenance, with regard to this property that they claim was not distributed, with regard to this $15,000 that they're trying to pull back out of the marital estate as non-marital contribution. All of these things exist within either the purview or scope or control of the respondent or the ability to go get it. Certainly the records of the circuit clerk as far as almost every probate matter, none of those things are sealed. And if you look at what it is that they're claiming my client knew at the time, there wasn't anything that they presented. All they would have to have done was go down one flight of stairs and go into the circuit clerk's office and get it. If it's a matter of some test to his credibility, whether it be the value of the estate or otherwise, or who a counsel was or otherwise. But the only thing that it looks as if had been done in the estate was the filing of the petition for probate and then the notice that was sent to the heirs. That was it. There had been an estate claim filed and I believe the certificate of publication had been filed prior to trial. That's it. What about prior to the motion to reconsider? Had the estate been concluded? I just looked at it this morning and it looks from a chronological standpoint that that may have been the case. But I was not part of that. Was there a motion to reopen proofs made at any point? No. No, sir. Nor was there any 201-K letter if there was in fact a request, as Your Honor asked, about inheritance. There was no 201-K letter. There was no motion as far as that goes to compel. There was no collection for purposes of submitting a request for admission of fact. None of those things were done. So this could not have been very high up on the radar of the respondent if we're not even following through in doing that, if we're not even following through in getting documents from the circuit clerk's office one floor below the courtroom where we were located trying this case. So when you're looking at this case and what it is that they're requesting by way of relief, it's more important, I think, to look at not only that but also the fact that there is a myriad of proof that to even give the judge a shot at considering an issue, go get it and find it. And they didn't. And that's the problem here, is that there was not an effort made to undertake these things to establish the veracity of her claim for disability or the extent of the property or the documents associated with it or this $15,000 that they now want back. None of those things were undertaken. And that is certainly not a matter of it being, if you're the proponent of a proposition in court, I was always told, you better have what you need by way of documents to back up your submission of that proposition to the court. And that was just lacking here. And I think that Judge O'Brien's opinion that I think was very well reasoned basically stands for that proposition. There were things here that they failed to bring to the court's attention on matters now that they're complaining about some error having been committed by Judge O'Brien. And we think that this was a very well reasoned decision. To answer your question, Judge, about the balance of the estate, it was 55-45 essentially. The respondent was receiving 55%. So it was obviously very well reasoned for the court to have come to that conclusion. It was supported by case authority. Those things were all blended into the eventual judgment that was entered. And we believe that the judge should be affirmed. All right. Thank you, Mr. Drysdale. Mr. Karpus, rebuttal? Thank you, Judge. Just briefly, Your Honors. Basically what they're trying to say to this court is we have documents in our possession that are relative and probative to how this marital estate should be distributed. We're going to hide them. We're not going to give them to you. And good luck going out there and finding them on your own to present them to the trial judge so the trial judge can make a proper determination. How do they hide them? In the circuit clerk's office? It's the subject of a discovery request. And they failed to disclose them, Your Honor. That's hiding them when you could walk downstairs and you had the name of the deceased? I don't understand. At that point then, Your Honor, it's putting the duty on us to go find all of the documents that are covered in our document production request. That's not the point of discovery. Well, in your document request, did you ask for the mother's will? We did not because at the time that the document production request was propounded was early in the proceedings and the mother had not passed at that point, Your Honor. We simply asked for all documents relating to inheritance or pleadings related to inheritances that the petitioner had possession of. And so the duty to supplement would certainly include these documents that he was getting before this hearing. And the position they're trying to put in front of this court of, well, we have them sitting on a table at our house. Go find them on your own. That's not what discovery is designed to do, Your Honor. And the petitioner says it was a 55-45 split and that's fair. Well, that may have been true regarding what the trial court had in front of it. That may have been true if we take out the substantial non-marital asset that needs to be considered. So it might have been fair at the time, but with all the information that the trial judge should have had, it certainly isn't fair. You know, we can review orders that the court made or that the court didn't make upon request of a party. But here you talk about a lack of discovery compliance, and yet there was no motion made directing the court's attention to this lack of discovery compliance. Is that right? There was not a motion made, Your Honor. What can we do? This court can simply remand back to the trial court the motion to reconsider, the fact that we raised new evidence in the motion to reconsider that was either concealed by them or not known at the time. And we presented those arguments to the trial judge, and basically what the trial judge did was simply say, well, I can't take judicial notice of this and didn't look into any of the merits of those arguments. And so the trial judge certainly erred in that regard by failing to actually address the issues that were raised in the motion to reconsider. And for these reasons, we would ask that this court reverse the trial judge and remand back for further consideration. Thank you. Thank you, counsel. Thank you both. The case will be taken under advisement, and a written decision shall issue.